UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD F. ANGEVINE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 4:09-CV-1959 (CEJ) ) |
| ANHEUSER-BUSCH COMPANIES PENSION PLAN, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P. Plaintiff filed an opposition, and the issues are fully briefed.

I. <u>Parties</u>[1]

Plaintiff Richard F. Angevine is salaried employee of Busch Entertainment Corporation ("BEC").[2] (Doc. #1, at 2, 4, paras. 2, 14 ). He resides in Florida, but maintains a home in St. Louis County, Missouri. <u>Id.</u> at 1, para. 1.

Anheuser-Busch Companies Pension Plan (the "Plan") is a defined benefits plan, which "provides retirement income to present and former salaried employees of the divisions and subsidiaries of" Anheuser-Busch Companies ("ABC"). <u>Id.</u> at 2-3, paras. 3, 9.

---

[1]The description of the parties as well as the factual and procedural allegations are based on the allegations in plaintiff's complaint. On April 14, 2010, the Court dismissed State Street Bank & Trust Co. from this action in accordance with plaintiff's notice of dismissal.

[2]Plaintiff purports to bring this action on behalf of a class. However, this Court has not yet certified the putative class.

ABC, a Delaware corporation authorized to do business in the State of Missouri, "engage[s] in various businesses, including brewing, marketing, and distributing beer." (Doc. #1, at 3, para. 8). Anheuser-Busch InBev, N.V., ("A-B InBev") is a Belgian corporation. Id. at 3, para. 11.[3]

## II.   The Plan

The Plan is an defined benefit pension plan for "present and former salaried employees of the divisions and subsidiaries of ABC." Id. at 13, para. 9. The Plan is governed by the Employee Retirement Income Act ("ERISA"), 29 U.S.C. §§ 1101 *et seq.*, as amended. ABC is the administrator and fiduciary of the Plan. Id. at 3, para. 10.

Section 1.1.11 of the Plan defines "Company" as ABC "or any successor corporation which assumes the obligations of the Company under the Plan."[4] (Doc. #16-1, at 9). Section 1.1.13 of the Plan defines "Controlled Group" as "[t]he controlled group of corporations, trades, and businesses . . . of which the Company is a part, as determined from time to time." Id. Section 1.1.34 defines "Participant" as "[a]n Employee or former Employee who has qualified for

---

[3]The Court will refer to defendants the Plan, ABC, and A-B InBev collectively as defendants.

[4]The Court will examine all of the provisions of the Plan "in . . . consideration of the 12(b)(6) motion to dismiss, even though it was not expressly part of [plaintiff's] pleadings, because it was incorporated into the pleadings by reference - the complaint specifically mentioned it as ground for" plaintiff's claims. Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (citing and quoting Deerbrook Pavilion, LLC v. Shalala, 235 F.3d 1100, 1101 (8th Cir. 2000) ("[o]n a motion to dismiss, a court must primarily consider the allegations contained in the complaint, although matters of public and administrative record referenced in the complaint may also be taken into account"); Venture Assocs. Corp. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir. 1991) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint are central to [its] claim")).

participation in accordance with Section 2 of any Supplement and is or may become entitled to a Retirement Benefit under such Supplement." (Doc. #16-1, at 14-15). Section 1.1.35 defines "Participating Employer" as "[t]he Company and any other member of the Controlled Group which maintains this Plan pursuant to Section 13 and their respective successors that assume their obligations under this Plan." Id. at 15. Section 3 of the Plan incorporates Section 3 of the Supplement to the Plan (the "Supplement"). (Doc. #1, at 5, para. 18; #16-1, at 19). Section 3.1 of the Supplement, entitled "Severance from Service Date," provides:

> Except as otherwise provided in Section 3.2, the Severance from Service Date of an Employee shall be the earlier of:
>
> (a) the date on which the Employee resigns, retires, dies or is discharged from employment with all members of the Controlled Group, <u>including for this purpose a termination of employment in connection with sale of part or all of its interest in an incorporated or unincorporated business or assets by a member of the Controlled Group</u>.

(Doc. #21-1, at 14-15) (emphasis added).

The Plan also incorporates Section 4.3(a) of the Supplement, entitled "Early Retirement Benefits," (Doc. #16-1, at 19), which provides:

> A Participant whose Credited Service ends on or after attainment of age fifty-eight (58) and completion of thirty (30) years of Vesting Service or employment as an Eligible Employee under this Supplement or at the Prior Separate Plan shall be entitled to an Early Retirement Benefit equal to the Participant's Accrued Benefit Determined as of the Participant's Early Retirement Date.

(Doc. #21-1, at 29).

Section 14.3 of the Plan, entitled "Claims Procedure," provides:

> An application for distribution shall be a condition precedent to any distribution under this Plan. <u>Any application for any distribution</u> under this Plan shall be submitted to the Plan Administrator or its delegate

in writing. The Plan Administrator shall then grant or deny such claim as soon as is reasonably practicable. . . .

Any claimant whose application for distribution has been denied may appeal such denial by filing an appeal and request for review with the Plan Administrator no later than 60 days after the claimant's receipt of the notice of denial of the claimant's claim. The Plan Administrator shall then promptly review its decision[.]

Any lawsuit based on a denial of a claim under the Plan must be filed no later than three years after the date of the Plan Administrator's decision on the appeal.

(Doc. #16-1, at 31-32) (emphasis added). Section 14.11 of the Plan explains that "the interpretation of all Plan provisions, and the determination of whether a Participant or Beneficiary is entitled to any benefit pursuant to the terms of the Plan, shall be exercised by the Plan Administrator in its sole discretion." Id. at 35.

Section 19.11 of the Plan, entitled "Change in Control," provides that:

(a) A Change in Control shall occur on an "Acceleration Date" as defined in the Company's 1998 Incentive Stock Plan, as amended from time to time, or any successor plan thereto. . .

(d) The Accrued Benefit of each Participant who is actively employed by a Participating Employer as of the date of a Change in Control shall be fully vested.

(e) Notwithstanding anything, during the three (3) years following a Change in Control,

(i) the classifications of Eligible Employees shall not be reduced or enlarged,

(ii) the formulas for determining Participants' Normal Retirement Benefits, Late Retirement Benefits, Early Retirement Benefits, Death Benefits and Termination Benefits and the forms of payment available under the Plan shall not be reduced, and

>   (iii)   no other benefits, rights and features (within the meaning of the regulations under Section 401(a)(4) of the Code) available to Participants shall be eliminated.
>
> (f)   The Normal Retirement Benefit, Late Retirement Benefit, Early Retirement or Termination Benefit of any Participant under the Supplement for the Anheuser-Busch Salaried Employees' Pension Plan . . . whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control . . . shall be determined by taking into account an additional five (5) years of Credited Service and, for the purpose of Section 4.3 only, an additional five (5) years of age, and shall in any event be at least fifteen percent (15%) larger than the Participant's Normal Retirement Benefit, Late Retirement Benefit, Early Retirement or Accrued Benefit, as calculated without regard to this Section 19.11(f) as of the date the Participant's employment with the Controlled Group ends; provided nothing in this Section 19.11(f) shall cause acceleration of a Participant's Payment Date under the Plan.

(Doc. #16-1, at 52-54).

ABC's 1988 Incentive Stock Plan provides:

> Except to the extent otherwise expressly provided in the Award Document or determined by the Committee, <u>termination of employment includes</u> the separation of a Recipient directly or through the separation of his or her Employer, from the group of companies comprised of the Company and its Subsidiaries and Affiliates for any reason, <u>including . . . (ii) separation of the Employer by any method which results in the Employer ceasing to be a Subsidiary or an Affiliate</u>.

(Doc. #1, at 6-7, para. 22) (emphasis added).

### III.   Background

On November 18, 2008, A-B InBev acquired ABC. (Doc. #1, at 3, para. 11). After the acquisition, BEC remained a subsidiary of ABC. <u>Id.</u> at 3, 4, paras. 8,16. "A-B InBev owns directly or indirectly 50 percent or more of the combined voting power of all classes of stock entitled to vote the shares of ABC and the members of the Controlled Group[.]" <u>Id.</u> at 3-4, para. 13.

On November 27, 2009, defendants sent an email to BEC salaried employees, including plaintiff, captioned, "Salaried Employee Transition Frequently Asked Questions," addressing concerns about the pending sale of BEC to Blackstone Capital Partners V, L.P., ("Blackstone"). (Doc. #1, at 9, para. 33). In the email, defendants offered the following advice:

> **What is the effect on the sale on my participation in the pension plan?**
>
> You will stop accruing benefits in the Anheuser-Busch Salaried Employee Pension Plan as of the date of the sale transaction. You are eligible for a pension distribution at any time after age 55. . . .
>
> **When can I begin receiving my pension benefit?**
>
> You may begin receiving your pension at any time after age 55. If you elect to start receiving your pension benefit before age 65, the amount of your benefit may be reduced. The amount of the reduction depends on your years of vesting service and your age on the date of the closing of the sale of BEC to Blackstone Group. . . .
>
> **Am I eligible for the +5/+5 enhancement applicable to involuntary terminations of employment within 3 years of the InBev change of control?**
>
> You will not be eligible for the +5/+5 enhancement upon the date of your separation from active participation in the Anheuser-Busch Salaried Employees' Pension Plan or at the time of your termination of employment with BEC after the sale is finalized.

Id. at 9-10, para. 34. Thus, "defendants [take] the position that those employees who became employed by Blackstone . . . have not had their employment with the Controlled Group terminated for purposes of the Plan." Id. at 9, para. 32.

On December 1, 2009, ABC sold BEC to Blackstone. Id. at 4, at para. 15. As of the acquisition date, BEC "was no longer a wholly-owned subsidiary of ABC,

a member of the Controlled Group, [or] a Participating Employer in the Plan." Id., para 16.

IV.     Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (May 21, 2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement."). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

V.      Discussion

**A.      Claim for Wrongful Denial of Benefits**

Defendants argue that plaintiff's ERISA claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) should be dismissed because plaintiff failed to exhaust his administrative remedies before filing this action. In response, plaintiff contends that defendants' November 27, 2009 email waived his obligation to exhaust his administrative remedies. Plaintiff repeatedly asserts that this communication "repudiated" his right to the +5/+5 retirement benefit enhancement under the Plan. See (Doc. #21, at 1, 3-5). Plaintiff then concludes that the email "establishe[s] that filing a claim for +5/+5 enhanced benefits would be utterly futile, permitting [him] to file suit without first engaging in the administrative process[.]" (Doc. #21, at 6) (emphasis added).

Plaintiff confuses the doctrine of repudiation and the futility exception. Repudiation addresses when the statute of limitations for an ERISA claim for benefits begins to run. See Union Pacific Railroad Co. v. Beckham, 138 F.3d 325, 330 (8th Cir. 1998). Unlike the doctrine of repudiation, the futility exception concerns whether a benefit claimant must first exhaust all administrative remedies before filing a claim in federal court. See Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770 (8th Cir. 2001) (citation omitted). Because the parties' dispute centers on whether plaintiff failed to exhaust his administrative remedies before filing this action, the Court will now address the futility exception.

While ERISA does not include an exhaustion requirement, "[i]n this circuit, benefit claimants must exhaust [the benefit plan's administrative] procedure before bringing claims for wrongful denial to court." Galman, 254 F.3d 768, 770 (citation omitted). "Where a claimant fails to pursue and exhaust administrative

remedies that are clearly required under a particular ERISA plan, his claim for relief is barred." Layes v. Mead Corp., 132 F.3d 1246, 1252 (8th Cir. 1998) (citation omitted). "A party may be excused from exhausting administrative remedies . . . if further administrative procedures would be futile," and "[a]n administrative remedy will be deemed futile if there is doubt about whether the agency could grant effective relief." Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp., 440 F.3d 992, 1000 (8th Cir. 2006). "'[U]nsupported and speculative' claims of futility do not excuse a claimant's failure to exhaust his or her administrative remedies." Midgett v. Washington Group Int'l Long Term Disability Plan, 561 F.3d 887, 898 (8th Cir. 2009) (citing Klaudt v. U.S. Dep't of Interior, 990 F.2d 409, 412 (8th Cir. 1993)). The futility exception requires a claimant to "show that it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision." Brown v. J.B. Hunt Transport Servs., Inc., 586 F.3d 1079, 1085 (8th Cir. 2009) (emphasis added) (citations omitted).

Plaintiff cites Union Pacific Railroad Co. v. Beckham, 138 F.3d 325 (8th Cir. 1998), and Janssen v. Minneapolis Auto Dealers Benefit Fund, 447 F.3d 1109 (8th Cir. 2006), to support his contention that exhaustion of administrative procedures would be futile. However, plaintiff's reliance on these cases is misplaced. First, in Union Pacific, the Eighth Circuit did not discuss the futility exception.[5] Rather,

---

[5]In dicta, the Eighth Circuit wrote that, "[w]hen exhaustion is futile, an ERISA beneficiary's claim 'accrue[s] at the time at which it became futile to apply for benefits, because . . . at that time there was a de facto denial of [the beneficiary's] claim.'" Union Pacific, 138 F.3d at 331 n.4 (citations omitted). The appellate court's dicta explains that, if a court finds that a claimant's exhaustion would be futile, the participant's claim for wrongful denial of benefits accrues as of the date upon which exhaustion became futile. However, the appellate court does not state that a wrongful denial of benefits claim is deemed futile when the statute of limitations for such claim

the appellate court determined that the statute of limitations for the benefit plan participants' claims for wrongful denial of benefits began to run as of the date that the employers and benefit plans repudiated the participants' right to benefits. Second, in Janssen, the Eighth Circuit did not address the exhaustion requirement. See 447 F.3d at 1113-15.

Upon careful review of plaintiff's complaint, the Court finds that plaintiff's allegations fail to demonstrate with certainty that defendants would have been denied upon appeal. A change in control occurred on November 18, 2008 when A-B InBev acquired ABC. (Doc. #1, at 3, para. 11). On December 1, 2009, Blackstone acquired plaintiff's employer, BEC, which involuntarily terminated his "employment with the Controlled Group[.]" Id. at 8, at para. 25. Prior to the sale of BEC, on November 27, 2009, defendants sent an email to all of BEC's salaried employees, including plaintiff, informing them that they "[would] not be eligible for the +5/+5 enhancement upon the date of [their] separation from active participation in the . . . Plan or at the time of [their] termination of employment with BEC after the sale [was] finalized." (Doc. #1, at 10, para. 34). Plaintiff made no attempt to verify his eligibility for the +5/+5 enhancement. Instead, plaintiff filed the instant action the same day that Blackstone acquired BEC. Apart from the November 27, 2009 email, plaintiff's complaint contains no allegations that establishes with certainty that the Plan administrator would have denied plaintiff's claim for the +5/+5 benefit enhancement upon initial review and appeal. The Court, thus, finds that the futility exception does not apply in this case. See

---

begins to run.

Commc'ns Workers of Am. v. AT & T Co., 40 F.3d 426, 433 (D.C. Cir. 1994) ("Simply put, denial of initial claims, which is all the record reveals, is not enough to show futility of internal Plan remedies.").

Additionally, plaintiff argues that the exhaustion requirement does not apply in this action because the Plan does not provide an administrative procedure for his claim. The Plan includes the following provision:

> 14.3 Claims Procedure
>
> An application for distribution shall be a condition precedent to any distribution under this Plan. <u>Any application for any distribution</u> under this Plan shall be submitted to the Plan Administrator or its delegate in writing. The Plan Administrator shall then grant or deny such claims as is reasonably practicable.

(Doc. #16-1, at 31) (emphasis added).

In his complaint, plaintiff repeatedly alleges that defendants refuse to apply certain provisions of the Plan to determine his future retirement benefits. (Doc. #1, at 2, para. 4; at 10, para, 35-36;at 11, para. 39). An application for future benefits falls directly within the claims procedure outlined in Section 14.3 of the Plan. Section 14.3 states that a participant may file an application for "any distribution" of benefits. The Plan, thus, does not exclude claims for future benefits.

Because the Plan provides an administrative procedure for future benefit claims, plaintiff did not exhaust his administrative remedies before filing the instant action, and plaintiff has failed to demonstrate with certainty that the Plan administrator would have denied his claim initially and on appeal, the Court will

dismiss plaintiff's wrongful denial of benefits claim, pursuant to 29 U.S.C. § 1132(a)(1)(B).

B.  Claim of Breach of Fiduciary Duty Under § 1132(a)(3)

Defendants also move to dismiss plaintiff's breach of fiduciary duty claim, pursuant to § 1132(a)(3), which provides that:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). The Eighth Circuit explains that "[t]his section permits plan participants and beneficiaries to 'seek equitable remedies in [their] individual capacit[ies] for a breach of fiduciary duty not specifically covered by other enforcement provisions of section 1132.'" Pichoff v. QHG of Springdale, Inc., 556 F.3d 728, 731 (8th Cir. 2009) (emphasis added) (alterations in original) (quoting Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 943 (8th Cir. 1999), and citing Varity Corp. v. Howe, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) and 29 U.S.C. § 1104).

In the complaint, plaintiff alleges that defendants breached their fiduciary duties, in violation of 29 U.S.C. § 1132(a)(3), by (1) refusing to apply the provisions of Section 19.11(f) of the Plan to determine plaintiff's future retirement benefits and (2) refusing to credit plaintiff with the +5/+5 benefit enhancement. (Doc. #1, at 10-11, paras. 36-37). Plaintiff, thus, seeks injunctive relief, "[e]njoining defendants from continuing to treat [him] as though [his] employment with the Controlled Group was not terminated effective as of the date that [he was] first employed by [Blackstone]." Id. at 15-16, para. E-F. Additionally,

plaintiff seeks punitive damages against defendants ABC and A-B InBev for their alleged breach of fiduciary duty.  Id. at 12, paras. 42-43; at 16, para. I.

The Court finds the relief that plaintiff seeks for defendants' alleged breach of fiduciary duty is not appropriate under § 1132(a)(3).  First, plaintiff asks the Court to order defendants to enforce his rights under the Plan and clarify his right to the +5/+5 enhancement.  These equitable remedies are specifically covered in § 1132(a)(1)(B).  Plaintiff essentially reasserts his wrongful denial of benefits under § 1132(a)(1)(B) in terms of a breach of fiduciary claim under § 1132(a)(3).  Second, plaintiff's request for punitive damages against ABC and AB-InBev is inappropriate.  The Court has noted that "[i]ndividual ERISA plan participants have no right of action for recovery of extra-contractual compensatory or punitive damages for breach of a fiduciary duty."  Jensen v. AT&T Corp., No. 4:06-CV-842 (CEJ), 2007 WL 22199714, at *3 (E.D. Mo. July 27, 2007) (emphasis added).  Based on the foregoing, the Court finds that plaintiff has failed to plead sufficient facts to state a breach of fiduciary claim.  As such, the Court will dismiss plaintiff's ERISA claim under 29 U.S.C. § 1132(a)(3).

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendants Anheuser-Busch Companies Pension Plan, Anheuser-Busch Companies, Inc., and Anheuser-Busch InBev, N.V., to dismiss the complaint [Doc. #15] is **granted**.

_____
CAROL E. JACKSON

UNITED STATES DISTRICT JUDGE

Dated this 16th day of July, 2010.